**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |
|---|---|
| HARVEST BANK OF MARYLAND | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 8:09-CV-00176-RWT |
|  | ) |
| COUNTRYWIDE HOME LOANS, INC. | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## THIRD AMENDED COMPLAINT

COMES NOW Plaintiff HarVest Bank of Maryland ("HarVest Bank" or "Plaintiff"), by counsel, and states for its Third Amended Complaint (the "Complaint") against Defendant Countrywide Home Loans, Inc. ("Defendant") as follows:

## INTRODUCTION

1. In March 2006, Plaintiff HarVest Bank of Maryland executed a contract with Defendant Countrywide Home Loans, Inc., a New York corporation with its principal place of business located in California, pursuant to which Defendant would sell, and did sell, a package of residential mortgage loans which the Defendant and certain of its affiliated or correspondent organizations had funded to various borrowers in the state of Maryland. Despite various contract warranties and covenants by the Defendant that the mortgage loans were prudently underwritten utilizing standard industry practices and customs, and that the Defendant would continue to service the mortgage loans to maximize the recovery on the principal and interest in favor of HarVest Bank, in fact the Defendant's underwriting and servicing practices were negligent and imprudent and fell far below industry standards, to the detriment of HarVest Bank.

2.  By May 2007, HarVest Bank was incurring damages from the Defendant's mortgage loans at an alarming and unprecedented rate:  As of the current date of the filing of this Third Amended Complaint, the default rates on the mortgage loans exceed 30 % and continue to grow; while the industry default rate for mortgage loans in the state of Maryland is approximately 7%. At the time of the filing of this Third Amended Complaint, out of 94 mortgage loans purchased from the Defendant, at least 34 loans have defaulted.  Seven of these loans have been foreclosed and sold as REO property. Three of these loans have been foreclosed and the resulting REO property is awaiting resale.  At least 22 other defaulted loans are at some stage of the foreclosure process.  Plaintiff HarVest Bank hereby files this Third Amended Complaint seeking relief and damages for all losses from mortgage loans purchased from the Defendant.

## FACTS COMMON TO ALL COUNTS

3.  Plaintiff HarVest Bank is a commercial bank organized under the laws of Maryland, with its chief executive office located at 9707 Medical Center Drive, Rockville, MD 20850.

4.  Defendant Countrywide is a New York corporation with its principal place of business located at 3440 Wilshire Blvd., 3rd floor, Los Angeles, California 90010.

5.  Defendant Countrywide is, and was at all relevant times, principally engaged in the business of purchasing residential mortgage loans originated by itself and others, packaging such loans into discrete portfolios of loans, and selling the portfolios to institutional investors either as whole loans, or as securities derived from the loans, with Defendant retaining the so-called "servicing rights". Servicing rights are the contractual obligation to service loans, coupled with the corresponding contractual right to retain, as compensation for such servicing, a stated percent of the payments collected from the relevant borrowers. The servicing of mortgage loans necessarily involves foreclosing the liens of certain mortgages on loans coming into default.

6. The majority of mortgage loans sold by Defendant were made initially by third party lenders from whom Defendant purchased mortgage loans on a systematic basis. Defendant published an on-line set of residential mortgage loan underwriting standards and procedures, which it required such lenders to use, and which Defendant used in the making of loans which it funded directly. Upon information and belief, such standards were referred to as Defendant's "Correspondent Lending Guidelines". By this method Defendant controlled the underwriting standards and procedures for all the mortgage loans sold to HarVest Bank.

7. On or about March 23, 2006 Defendant and HarVest Bank entered into a Mortgage Loan Purchase and Servicing Agreement which is attached hereto and made a part hereof as **Exhibit A** (the "Agreement"). Pursuant to the terms and conditions of the Agreement, Defendant sold HarVest Bank a series of residential mortgage loans with Defendant retaining the servicing rights of those loans. All of the mortgage loans in all such packages are collectively referred to herein as the "Portfolio." There were approximately 93 individual loans in the Portfolio. All the residences encumbered by the subject mortgages in the Portfolio are located in the State of Maryland, the majority in Montgomery County. All borrowers and guarantors under loans in the Portfolio are resident in the State of Maryland. Each individual mortgage loan will be identified herein by the surname of the relevant borrowers.

8. In or around May 2007, after learning that certain loans in the Portfolio had come into default for nonpayment, HarVest Bank became concerned about the poor communication Defendant was providing about the servicing status of the Portfolio, and Defendant's lack of diligence in servicing the Portfolio. This initiated an 18 month sequence of complaints and other communications by HarVest Bank, attempting to obtain better reporting and more diligent and efficient servicing of the Portfolio as required under the Agreement. During that period,

Defendant liquidated the collateral on several loans in the Portfolio.  In addition, Defendant's internal auditors made findings and rendered written reports to HarVest Bank, which are attached hereto and made a part hereof as **Exhibit B**, acknowledging that Defendant Countrywide had breached the Agreement in its servicing of at least ten (10) loans in the Portfolio.

9.  The initial complaint in this case was filed on or about December 29, 2008 in the Circuit Court for Montgomery County, Maryland (the "Maryland Court") as Case No. 306495V, and removed to this Court by Defendant on or about January 28, 2009. The Maryland Court has jurisdiction over Defendant pursuant to MD. CTS. & JUD. PROC. § 6-102 because Defendant is qualified to do business in the State of Maryland as a foreign corporation and appointed a resident agent for service of process.  Also, pursuant to MD. CTS. & JUD. PROC. § 6-103, the Maryland Court has jurisdiction over Defendant because Defendant performed and performs services under the Agreement in the State of Maryland, has contracted under the Agreement to supply services in the State of Maryland, and has possessed and possesses real property in the State of Maryland.

10. Venue is proper in Montgomery County, Maryland under MD. CTS. & JUD. PROC. § 6-201 *et seq.*

11. As of the filing of this Third Amended Complaint, 34 mortgage loans from the Portfolio have defaulted, proceeded to foreclosure and/or led to the sale of REO Property, all at substantial losses to HarVest Bank, due to the failure by Defendant under the Agreement to provide underwriting and servicing pursuant to industry standards for the residential mortgage loan markets.  As of the filing of this Third Amended Complaint, the list of defaulted loans includes loans to borrowers Mangieri, Stern, Herr, Elna Reyes, Yi, Okonkwo, Melgar, Rizvi, Dam, Brickley, Malate, Karimi, Chhabra, Lee, Pererra, Rodrigues, Cala, Flores, Douglas,

4

Villatoro, Kang, Guzman, Hussain, Sicrodrigues, Ahmed, Watson, Hwuyhua, Hererra, Carberg, Espinal, Medina, Martin Reyes, Hirunyakes and Song. Hereinafter, the term "Defaulted Loans" refers collectively to the foregoing loans and any other Portfolio loan in default.

## COUNT I
### (Negligence- Underwriting)

12. The allegations set forth in paragraphs 1-11 are realleged and incorporated herein by reference as if set forth verbatim.

13. The underwriting practices by the Defendant regarding the Portfolio Loans did not meet the standards of a reasonable and prudent mortgage loan underwriter. The various underwriting practices at issue in this lawsuit are numerous, including failure to obtain the obligation of spouses to pay the mortgages; failure to verify incomes of the borrowers; and failure to verify the assets of the borrowers. The Defendant's negligence led to the borrowers' income and assets being overstated in the underwriting of the mortgage loans and loans being originated as prime mortgage loans and sold to HarVest Bank as such, when in fact they were not.

14. Upon information and belief, the Portfolio Loans were all underwritten according to Defendant Countrywide's own underwriting standards, which were not prudent and fell below the requisite standard for the industry. For example, in the case of mortgage loans to some borrowers, the loans were structured such that married borrowers were able to obtain the loans without their spouses being obligated to repay the loans. In the loan application and approval process for the Portfolio Loans, income of the borrowers was not verified and, in most cases, the assets of the borrowers were also not verified. As the Portfolio Loans were approved and funded by such terms, procedures and standards, the borrowers, upon information and belief, overstated

their income and assets, and were inclined to and able to obtain loans in amounts which exceeded their ability to repay the loans. As a proximate result of the use of such underwriting standards and procedures, the Defaulted Loans came into default, causing HarVest Bank to suffer losses on such loans.

15. Defendant knew, or with the exercise of due care should have known, that the above underwriting standards applied to the Portfolio Loans would result in significant losses on such loans.

16. The underwriting standards applied by Defendant to the Portfolio Loans were negligent and fell below the standard of care and practice for a reasonable, prudent residential mortgage loan originator and/or a mortgage loan packager and seller. In its originating, packaging and selling of the Portfolio Loans to HarVest Bank, Defendant owed HarVest Bank a duty to exercise the degree of care and skill that a reasonable and prudent mortgage loan originator, and a reasonable and prudent mortgage loan packager and seller, would use. Defendant breached and/or neglected such duty of care by its use of the underwriting standards it applied to the Portfolio Loans and by its requirement that all correspondent lenders implement and/or utilize the same negligent standards and procedures.

17. Defendant's breach of its duty of care to HarVest Bank and its negligent acts set forth above have caused HarVest Bank to suffer damages in amounts to be determined.

WHEREFORE, Plaintiff HarVest Bank respectfully requests this Court to award judgment in its favor and against Defendant Countrywide in amounts to be determined, plus reasonable attorneys fees and costs expended.

## COUNT II
### (Breach of Warranties-- Underwriting)

6

18.   The allegations set forth in paragraphs 1-17 are realleged and incorporated herein by reference as if set forth verbatim.

19.   In Section 3.02 of the Agreement, which is captioned "Representations and Warranties Regarding Individual Mortgage Loans", Defendant made certain representations and warranties to HarVest Bank. Specifically, Section 3.02(p) of the Agreement thereof provides, in relevant part, as follows:

> *Origination and Collection Practices. The origination and collection practices used by Countrywide with respect to each Mortgage Note and Mortgage have been in all respects legal, proper, prudent and customary in the mortgage origination and servicing business.*

20.   Section 3.03(a) of the Agreement reflects the parties' understanding that HarVest Bank would be able to rely on Defendant's representations and warranties without attempting to recreate Defendant's unique knowledge of residential mortgage loans and the underwriting process. Section 3.03(a) provides, in pertinent part, as follows:

> *Notice of Breach. The representations and warranties set forth in Sections 3.01 and 3.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or the failure to examine any Collateral Documents or Credit File.*

21.   Because Defendant controlled the underwriting standards both for mortgage loans funded by it directly, and for mortgage loans it purchased for resale which were funded by its affiliated or correspondent lenders, the negligent underwriting standards constitute "origination practices used by Countrywide", as such phrase is used in Section 3.02(p) of the Agreement.

22.   Defendant's underwriting standards used in the Portfolio Loans were not proper, prudent and/or customary in the mortgage origination servicing business as represented in

7

Section 3.02 of the Agreement. Accordingly, Defendant breached its representations and warranties in Section 3.02 of the Agreement with respect to the Portfolio Loans.

23.     Section 3.02(c) of the Agreement provides that in the event of Defendant's breach of the representations and warranties set forth in Section 3.02, Defendant shall be obligated to either replace the subject loans with mortgage loans described as Qualified Substitute Mortgage Loans in the Agreement or repurchase the subject loans for a Repurchase Price defined in the Agreement.

WHEREFORE, for the foregoing reasons, Plaintiff HarVest Bank respectfully requests that the Court:

A) Compel Defendant Countrywide to replace the Defaulted Loans with Qualified Substitute Mortgage Loans, as defined in the Agreement; or

B) Compel Defendant Countrywide to repurchase the Defaulted Loans at the Repurchase Price defined in the Agreement; and

C) Enter an Order for such other and further relief as the Court may deem equitable and just.

## COUNT III
### (Negligent Misrepresentations - Underwriting)

24.     The allegations set forth in paragraphs 1-23 are realleged and incorporated herein by reference as if set forth verbatim.

25.     Defendant made statements about its underwriting and loan originating practices to HarVest Bank orally and in the Agreement which were false when made. Defendant knew or with the exercise of due care should have known that such statements were false when made, and was negligent in making such statements. Such false statements include representations in

Section 3.02 of the Agreement and its subparts, including the representation that its loan origination practices in regard to Portfolio Loans were "proper, prudent and customary in the mortgage origination and servicing business." Such false statements included an oral statement in or about November, 2007 by Defendant through its employee Karl Parks to HarVest Bank employee Larry Singer that Portfolio loans were underwritten according to Fannie Mae guidelines. HarVest Bank relied on these false statements in entering into the Agreement and subsequently purchasing loans under the Agreement, and was justified in so relying.

26.  Defendant knew that HarVest Bank would purchase the subject mortgage loans under the Agreement in reliance upon such statements. Defendant further knew or should have known that if its underwriting practices were not proper and prudent, HarVest Bank would experience excessive losses on the Portfolio loans.

27.  HarVest Bank has suffered damages in amounts to be determined from the loan losses in the Portfolio Loans, and such damages were proximately caused by Defendant's negligent misrepresentation of its loan origination practices.

WHEREFORE, Plaintiff HarVest Bank respectfully requests the Court to award judgment in its favor and against Defendant in amounts to be determined, plus reasonable attorney fees and cost expended.

## COUNT IV

### (Breach of Contract – Servicing)

28.  The allegations set forth in paragraphs 1-27 are realleged and incorporated herein by reference as if set forth verbatim.

29.  Section 4.03(a) of the Agreement between the parties obligates the Defendant "to maximize the receipt of principal and interest" of the mortgage loans sold to HarVest Bank.

9

During the course of the Defendant's servicing of several of the Defaulted Loans, which number continues to grow, the Defendant failed to maximize the value of the recovery on the loans by failing to take reasonable steps to obtain default remedies other than foreclosure and sale of the subject REO Property such as modification, forbearance, short sales, and retention of REO property; by its unreasonable delays in foreclosures; by entering unreasonable protective bids during the foreclosure proceedings; and by not pursuing collection of deficiency balances against borrowers.

30. In the servicing the Defaulted Loans, Defendant has, upon information and belief, communicated with the relevant borrowers largely or solely through dispatch of its standard form demands and notices, and by legal process related to foreclosure proceedings. Defendant has not explored the borrowers' full ranges of resources and the Lender's full ranges of alternatives to foreclosure in order to maximize the recovery of HarVest Bank's principal and interest under the Defaulted Loans.

31. In servicing several of the Defaulted Loans, Defendant unreasonably delayed foreclosure of the subject properties. Plaintiff objected to Defendant's delay in conducting foreclosures. In regards to one such delay (i.e. the Mangieri loan) Defendant Countrywide's servicing personnel represented to Plaintiff, among other things, that there was "an unknown reason for the delay." Defendant Countrywide's delay in foreclosing was unreasonable and unjustified and constitutes a breach of the Agreement.

32. During the periods of default in which Countrywide delayed foreclosure, the residential real estate market in the subject market areas was experiencing a decline in market values and sale prices, a fact which was known or should have been known to Defendant Countrywide in the exercise of reasonable diligence. Upon information and belief, if Defendant

10

Case 8:09-cv-00176-RWT   Document 48   Filed 10/07/09   Page 11 of 21

Countrywide had conducted the foreclosures as required under the Agreement, Defendant Countrywide would have obtained a price for the subject residential real estate collateral greater than what it obtained. Due to the unreasonable delay of foreclosure by Defendant Countrywide, however, Defendant Countrywide obtained net proceeds from the liquidation of this collateral in amounts significantly below the balance of principal and interest owed to Plaintiff.

33. At the time Defendant conducted its foreclosure auctions, the value of the subject residences had declined below the balance of the subject loans, so that recourse to the collateral alone was not a reasonable method of recovering the full loan balances, and recourse to the general credit of the borrowers through enforcement of a deficiency claim was necessary to satisfy the loans. This fact was known or should have been known to Defendant in the exercise of reasonable diligence in conducting the foreclosure of the loans.

34. In cases of foreclosure auctions where the lender's protective bid is the winning bid, the lender receives legal title to the subject collateral. Under the Agreement, collateral owned in this way is called "REO Property." In real estate foreclosures, the lender's protective bid is the winning bid in most cases, so resale of REO Property is necessary before any actual recovery of money occurs.

35. Defendant breached Section 4.03(a) of the Agreement in foreclosure sales of Defaulted Loans in which the protective bid was higher than the value of the subject collateral, less expenses. In the case of at least one of the Defaulted Loans (i.e., borrower Rizvi), Defendant breached Section 4.03(a) of the Agreement by permitting a third party to purchase the property at the foreclosure auction for a price below the dollar amount of a previous third party short sale offer, and an even greater amount below the fair value of the property, without raising its initial protective bid.

11

36. Defendant furthermore breached Section 4.03(a) of the Agreement by not collecting deficiency balances from borrowers. When liquidation of collateral fails to satisfy a loan in full, absent special circumstances, the lender is entitled to collect the unpaid balance from the borrower, i.e., the deficiency claim. The lender will make reasonable efforts to collect unpaid principal and interest in mortgage loans where all collateral has been liquidated without satisfying the loan in full, including collection and legal process efforts, to satisfy the deficiency claim. Defendant failed to make any effort, with or without legal process, to collect any part of any deficiency claim.

37. Defendant's failures to explore the borrowers' full ranges of resources and the parties' full ranges of alternatives to foreclosure, unreasonably delaying foreclosures, entering unreasonable protective bids during foreclosure proceedings, not pursuing collection of the deficiency balances against the borrower, and overall failure to maximize the recovery of Plaintiff's principal and interest under the Defaulted Loans constitute breaches of Section 4.03(a) of the Agreement and Events of Default under the Agreement, and have caused HarVest Bank to suffer damages in respect to the Defaulted Loans. The total amount of damages has yet to be determined, but continues to grow.

38. The Agreement further requires Defendant to indemnify HarVest Bank for the above-mentioned loss. Despite demand by HarVest Bank, Defendant has failed and/or refused to do so for such loss as required under Section 6.01 of the Agreement. Defendant's failure to indemnify HarVest Bank for its loss constitutes a separate and distinct breach of the Agreement.

39. Defendant's breaches of the Agreement are without justification or excuse.

WHEREFORE, Plaintiff HarVest Bank respectfully requests the Court to award judgment in its favor and against Defendant Countrywide in separate and specific amounts to be determined for each Defaulted Loan; plus reasonable attorney fees and cost expended.

## COUNT V

### (Negligence - Servicing)

40. The allegations set forth in paragraphs 1-39 are realleged and incorporated herein by reference as if set forth verbatim.

41.     From the time that Defendant undertook to service the Portfolio loans for Plaintiff HarVest Bank, Defendant owed HarVest Bank a duty to exercise the degree of care and skill in a manner that a prudent and reasonable mortgage loan servicer would use to service such loans, including in its conduct of the foreclosures on the real property securing the loans. Defendant breached and/or neglected the duty of care it owed to HarVest Bank in servicing the Defaulted Loans, by failing to follow the advice and instruction of HarVest Bank, failing to explore the borrowers' full range of resources and adequately pursuing alternatives to foreclosure, unreasonably delaying foreclosing, and entering unreasonable protective bids in foreclosure proceedings so as to discharge negligently portions of HarVest Bank's deficiency claims or allowing the sale of the subject property below its fair value.

42. Defendant furthermore owed HarVest Bank a duty of care to resell the REO Properties for the Defaulted Loans for a price which was at or reasonably near their fair value.

43. Defendant breached and/or neglected the above duties of care, and as of the time of the filing of this Third Amended Complaint was negligent in its servicing of some or all of the Defaulted Loans. The total amount of damages has yet to be determined, but continues to grow.

44. Defendant's actions in connection with the Defaulted Loans constitute negligence causing Plaintiff to suffer damages.

45. Defendant's actions are without justification or excuse.

WHEREFORE, Plaintiff HarVest Bank respectfully requests the Court to award judgment in its favor and against Defendant Countrywide in separate and specific amounts to be determined for each Defaulted Loan; plus reasonable attorney fees and cost expended.

## COUNT VI

### ((Breach of Contract - Song Loan)

46.   The allegations set forth in paragraphs 1-45 are realleged and incorporated herein by reference as if set forth verbatim.

47.   In Article IV of the Agreement (Administration and Servicing of Mortgage Loans), Section 4.01 provides as follows:

> *"Without limiting the foregoing, Countrywide may permit forbearance or allow for suspension of Monthly Payments for up to one hundred and eighty (180) days if the Mortgagor is in default or Countrywide determines in its reasonable discretion, that default is imminent and if Countrywide determines that granting such forbearance or suspension is in the best interest of the Purchaser."*

48.   On or about July 12, 2008, Defendant agreed to a so-called "capitalization" of $10,620.08 of interest payments due on a mortgage loan to borrower Song, with such sum being changed in the loan accounting from accrued interest to be shown as a portion of additional principal. In fact, such "capitalization" was a deferral of the payments due in the stated amount, and the deferral period was the full loan term, which exceeds 180 days, in breach of Section 4.01 of the Agreement.

49.   Defendant's actions constitute an Event of Default as defined in Section 7.01(a)(ii) of the Agreement that caused HarVest Bank to suffer damages in an amount which have not yet been determined.

50.   Defendant's breach of the Agreement is without justification or excuse.

WHEREFORE, Plaintiff HarVest Bank respectfully requests the Court to award judgment in its favor and against Defendant in amounts to be determined but which exceed $5,000, plus reasonable attorney fees and cost expended.

## COUNT VII

### (Breach of Fiduciary Duty: Wrongful Taking of REO Financing Opportunity - Herr Loan)

51.   The allegations set forth in paragraphs 1-50 are realleged and incorporated herein by reference as if set forth verbatim.

52.   Defendant owes a fiduciary duty to HarVest Bank to refrain from taking advantage of valuable business opportunities which may arise, or which it becomes aware of, during the course of its work for, and the servicing of the loans on behalf of, HarVest Bank.

53.   On or about August 26, 2008, in the course of consummating the resale of REO Property regarding the Herr loan, Defendant came upon the opportunity to provide mortgage loan financing for the purchaser of the Herr realty. Defendant funded the loan itself and failed to offer the financing opportunity first to HarVest Bank. Such loan was made on terms profitable to Defendant, and would have been profitable to HarVest Bank had Defendant presented the business opportunity to HarVest Bank. This opportunity was acquired by Defendant for the benefit of HarVest Bank, but Defendant took it for its own profit and advantage. Such taking was wrongful and breached Defendant's fiduciary duties to HarVest Bank, causing HarVest Bank to

15

suffer damages for this lost business opportunity in the amount of profit Plaintiff would have earned on the loan made to finance the purchase of the Herr REO Property. The amount of such profit equaled $72,000.

WHEREFORE, Plaintiff HarVest Bank respectfully requests the Court to award a judgment in its favor and against Defendant Countrywide in the amount of Seventy-Two Thousand Dollars ($72,000), plus reasonable attorney fees and cost expended.

### COUNT VIII
### (Accounting - All Loans)

54.    The allegations set forth in paragraphs 1-53 are realleged and incorporated herein by reference as if set forth verbatim.

55.    As a result of Defendant's wrongful actions, Plaintiff HarVest Bank is entitled to an accounting of Defendant's servicing of the Portfolio, including all of its business transactions connected with the resale of REO Property under the Agreement.

WHEREFORE, Plaintiff HarVest Bank respectfully requests the Court grant the following relief:

A) Enter an order for an accounting of the finances of Defendant in regard to the Portfolio, including all of its business transactions connected with the resale of REO Property under the Agreement, and

B) Enter an order for such further relief as the Court may deem equitable and just.

### COUNT IX
### (Declaratory Judgment and Money Judgment: Termination of Portfolio Servicing Rights - All Loans)

56.    The allegations set forth in paragraphs 1-55 are realleged and incorporated herein by reference as it set forth verbatim.

57.  Sections 5.04 (Annual Statements as to Compliance) and 5.5 (Annual Independent Certified Public Accountants' Servicing Report) of the Agreement require Defendant to provide HarVest Bank, annually, an Officer's Certificate of due performance of the Agreement, and an independent certified public accountant's statement of its audit of Defendant's activities. Notwithstanding Defendant's obligations under the Agreement, it has failed to provide the Officer's Certificate or the audit statements.

58.  Section 5.02(b) of the Agreement further provides as follows:

*"Countrywide shall also provide the Purchaser with such information concerning the Mortgage Loans… as the Purchaser may reasonably request from time to time."*

In a letter dated August 14, 2007 which is attached hereto and made a part hereof as **Exhibit C**, HarVest Bank requested certain information on the loans, including a list of loans which were over 90 days delinquent and a list of loans ceasing to be delinquent to be provided on a recurring basis in accordance with Section 5.02(b) of the Agreement. In nearly all cases, Defendant failed to provide the information.

59.  Defendant's failure to provide the Officer's Certificate, the audit statement and the information requested in the August 14, 2007 letter each constitute separate and distinct breaches of the Agreement.

60.  Section 7.01(a) of the Agreement, titled "Termination Due to an Event of Default", provides, in relevant part, as follows:

*"In case of one or more Events of Default…Purchaser by notice in writing to Countrywide may, in addition to whatever rights the Purchaser may have at law or in equity to damages, including injunctive relief and specific performance, terminate all rights and obligations of Countrywide under this Agreement and in and to the Mortgage Loans and the proceeds thereof."*

17

Sec. 7.01(a) further requires Defendant to cooperate with HarVest Bank in transferring the servicing of the loans to HarVest Bank after termination of the Agreement.

61.   By letter dated October 21, 2008 HarVest Bank gave written notice to Defendant of its various breaches of the Agreement and Events of Default and further declared all rights and obligations of Defendant under the Agreement, and in and to the Portfolio and the proceeds thereof, to be terminated. *See* **Exhibit D**. HarVest Bank also demanded Defendant's cooperation in the transfer to HarVest Bank of servicing of the Portfolio. HarVest Bank was duly entitled under the Agreement to terminate Defendant's servicing of the Portfolio and to demand that Defendant transfer to HarVest Bank all servicing authority and loan documents necessary to permit HarVest Bank to service the Portfolio on its own.

62.   To date, however, Defendant has failed and refused to transfer servicing of the Portfolio to HarVest Bank or to provide the necessary loan documents to HarVest Bank.

63.   The Court should adjudicate, declare and decree that HarVest Bank has duly terminated the Agreement, including Defendant's authority to service the Portfolio loans and take a portion of the proceeds thereof, and that Defendant is obligated to turn over to HarVest Bank all Portfolio servicing rights and related items necessary for HarVest Bank to undertake the servicing of the Portfolio on its own.

64.   Such failures and refusals to transfer servicing breached the Agreement, and have caused HarVest Bank to suffer damages in amounts not yet determined. Such breaches of the Agreement are without justification or excuse.

WHEREFORE, for the foregoing reasons, Plaintiff HarVest Bank respectfully requests that the Court grant the following relief:

18

A) Enter a judgment which declares that Plaintiff HarVest Bank by its written notice of October 21, 2008 has duly terminated all rights and obligations of Defendant Countrywide under the Agreement and in and to the Portfolio loans and the Portfolio proceeds;

B) Enter a judgment which declares that Defendant Countrywide is obligated to turn over to Plaintiff HarVest Bank all servicing rights and related items in regard to the Portfolio;

C)   Award Plaintiff HarVest Bank judgment against Defendant Countrywide in an amount to be determined, plus its reasonable attorney fees and costs expended; and

D) Enter an Order for such further relief as the Court may deem equitable and just.

## COUNT X
### (Specific Performance: Turnover of Servicing to Plaintiff - All Loans)

65.   The allegations set forth in paragraphs 1-64 are realleged and incorporated herein by reference as if set forth verbatim.

66.   Upon HarVest Bank's termination of the Agreement, Defendant is duly obligated to turn over to HarVest Bankall servicing rights and related items, including the loan accounting for each loan in the Portfolio, all escrow accounts and deposits, and tax reporting records and forms in regard to the Portfolio.

67.   Notwithstanding its obligation to transfer the Portfolio to HarVest Bank and to turn over all such data and information to HarVest Bank necessary for HarVest Bank to service the Portfolio on its own, Defendant has failed and refused to do so.

68.   Defendant's actions are without justification or excuse.

WHEREFORE, for the foregoing reasons, Plaintiff HarVest Bank respectfully requests that the Court:

19

A) Compel Defendant Countrywide to turn over to Plaintiff HarVest Bank all servicing rights and related items in regard to the Portfolio, in the manner contemplated by Section 7.01(a) of the Agreement, including the loan accounting of each loan in the Portfolio, all escrow accounts and deposits for each loan, all tax reporting records and forms for each loan in the Portfolio, and all other documents and records necessary for Plaintiff to service the loans in the loan Portfolio;

B) Award Plaintiff HarVest Bank its reasonable attorney fees and costs expended; and

C) Enter an Order for such other and further relief as the Court may deem equitable and just.

Respectfully submitted,

**LILES PARKER PLLC**

By:   _____/s/ Michael R. Carithers, Jr._____
Michael R. Carithers, Jr.
**Liles Parker PLLC**
4400 MacArthur Blvd., N.W.
Suite 203
Washington, DC 20007
Tel: (202) 298-8750
Mobile: (240) 416-2443
Fax: (202) 337-5804
Counsel for Plaintiff

**<u>JURY DEMAND</u>**

Plaintiff hereby requests a trial by jury on all matters so triable.

_____/s/ Michael R. Carithers, Jr._____
Michael R. Carithers

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, pursuant to Fed. R. Civ. P. 5 (a) a true and correct copy of the foregoing Second Amended Complaint was electronically filed and sent via first class U.S. mail, postage prepaid, on the 18th of September, 2009 to Martin Bryce, Robert A. Scott, Esq. and Glenn A. Cline, Esq., Ballard Spahr Andrews & Ingersoll, LLP, 300 E. Lombard St.,18th Floor, Baltimore, MD 21202.

/s/

Michael R. Carithers, Jr.
*Of Counsel*
**LILES PARKER PLLC**
4400 MacArthur Blvd. NW
Suite 203
Washington, D.C. 20007
Email: mcarithers@lilesparker.com
Bar No. 27272
Tel.: (202) 298-8750
Fax: (202) 337-5804
*Counsel for Plaintiff*

22